IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KURT DANIELS, | ) | CIVIL NO. 11-00287 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | PATRICK R. DONAHOE'S MOTION |
| vs. | ) | FOR DISMISSAL AND SUMMARY |
| | ) | JUDGMENT |
| PATRICK R. DONAHOE, | ) | |
| Postmaster General of the | ) | |
| United States; the UNITED | ) | |
| STATES POSTAL SERVICE, a | ) | |
| Public Corporation; HERBERT | ) | |
| YOKOYAMA; U.S. POSTAL SERVICE | ) | |
| EMPLOYEES; HONOLULU AIRPORT | ) | |
| STATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT PATRICK R.
DONAHOE'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT**

I.      INTRODUCTION.

        Plaintiff Kurt Daniels alleges that his employer, the

United States Postal Service, discriminated against him in

violation of Title VII, 42 U.S.C. §§ 2000e-2000e-17, and 42

U.S.C. §§ 1981, 1981a.[1]  Daniels is an African-American male who

complains that he was denied a promotion but nonetheless required

to perform the job duties of the position he had sought without

receiving extra pay.  Defendant Patrick R. Donahoe, in his

_____

        [1]  Daniels's complaint also asserted claims under 42 U.S.C.
§ 1983 and chapter 387 of Hawaii Revised Statutes.  The parties
dismissed those claims by stipulation.  Stipulation to Dismiss in
Part Plaintiff's Complaint 2, ECF No. 15.  The parties also
stipulated to dismiss all named Defendants except the moving
party, Patrick R. Donahoe, who, according to the stipulation, is
being sued in his official capacity.  Id.

official capacity as the Postmaster General of the United States, moves for dismissal of and summary judgment with respect to Daniels's claims. Although, as explained below, the court is unpersuaded by the challenge to this court's subject matter jurisdiction, the court grants Donahoe's motion on other grounds. The court dismisses Daniels's claims under 42 U.S.C. §§ 1981 and 1981a, and grants summary judgment in Donahoe's favor on the remaining claims.

**II.      FACTUAL BACKGROUND.**

Daniels is an African-American male employed by the United States Postal Service as a Maintenance Engineering Specialist. Concise Statement of Material Facts in Support of Defendant's Motion for Summary Judgment[2] ("Defendant's Facts")

---

[2] The court notes that Daniels's concise counter-statement of material facts fails to comply with the Local Rules. Local Rule 56.1(b) requires that a party opposing a motion for summary judgment file a concise statement "that admits or disputes the facts set forth in the moving party's concise statement, as well as sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." Under Local Rule 56.1(c), a concise statement "shall particularly identify the page and portion of the page of the document referenced. The document referred to shall have relevant portions highlighted or otherwise emphasized."

Although Daniels admits or denies the facts set forth in Donahoe's concise statement and sets forth facts he contends are in dispute, Daniels fails to properly direct the court to the evidence demonstrating those facts. Every paragraph refers to the "Affidavit of Kurt Daniels," which the court cannot locate. Presumably Daniels meant to cite to the declaration of his counsel, Andre Wooten, which is attached to his concise statement. ECF No. 39-1. Every paragraph also directs the court to between 13 and 20 of Daniels's 23 exhibits without identifying

¶ 2, ECF No. 22.  Allegedly first hired in 1985, <u>see</u> Compl. ¶ 1,

ECF No. 1, he has held that position since 2004, and his duties

include analyzing the performance of mail processing machines and

providing expertise to lower-level maintenance employees.  <u>Id.</u>

¶ 3.  Daniels is not a supervisor.  <u>Id.</u>

---

the page and portion of any document.  Nor do relevant portions
of any of the documents appear to be highlighted.

    Under Local Rule 56.1(f), "this court shall have no
independent duty to review exhibits in their entirety, but rather
will review only those portions of the exhibits specifically
identified in the concise statements."  Daniels fails to properly
direct the court to evidence demonstrating the material facts in
issue, and the court declines to itself comb through his 23
exhibits.

    Daniels's own concise counter-statement merely reasserts his
argument and theory of the case.  In essence, he states that
Defendants discriminated against him "by continuing to require
him to perform work on a steady basis which was not in his job
description" without extra pay.  Plaintiff's Concise Counter-
Statement of the Case ¶ 15, ECF No. 39.  This statement is
conclusory and does not set forth the material facts in issue.
It also directs the court to Daniels's affidavit and 15 exhibits
without identifying page numbers.

    The court also notes that Daniels's counsel has been
admonished numerous times in this district about his disregard of
local rules.  <u>See, e.g.</u>, <u>Gill v. Waikiki Lanai, Inc.</u>, Civ. No.
10-00557 LEK-RLP, 2011 WL 3648772, at *3 (D. Haw. Aug. 8, 2011)
(noting repeated violations of local rules and listing cases);
<u>McNally v. Univ. of Haw.</u>, 780 F. Supp. 2d 1037, 1049 (D. Haw.
2011) (noting failures to follow court rules and listing cases);
<u>White v. Pac. Media Group, Inc. et al.</u>, 322 F. Supp. 2d 1101,
1111 n.3 (D. Haw. 2004) (noting numerous "typographical errors
and flagrant misstatements" in submissions and complaint filed on
behalf of the plaintiff, leading the court to "strongly admonish
[ ] counsel's flagrant lack of attention to detail in [the]
court['s] filings" and "find[ing] that [counsel's] lack of
diligence falls below the standard of professional competence
required to practice before the federal court").

Around 2004, Daniels's supervisor, Herbert Yokoyama, approved Daniels, among others, to serve as a detailee for the Manager, Maintenance Operations position ("MMO"), which was vacant at that time. Defendant's Facts ¶ 3. A detail is a temporary position that comes with a pay raise. Id. Daniels alleges that he performed the MMO duties as a detailee for a year and a half, and that he received a pay differential of $8,000 per year. Compl. ¶¶ 8, 13.

In 2006, Yokoyama selected Bonnie Tomooka to fill the vacant MMO position. Defendant's Facts ¶ 6. Tomooka had applied for the position as a downgrade from her then-current position as the Manager of Distribution Operations. Id. Postal Service regulations gave Yokoyama discretion to hire on a noncompetitive basis an applicant who sought a downgrade or a lateral move. Id. ¶ 5. Yokoyama ended up not considering applicants who, like Daniels, were seeking a promotion. Id. ¶ 6. To promote someone into the MMO position, Yokoyama would have had to hire that person through the competitive process, which could have involved interviews and an applicant review panel. Id. Yokoyama routinely filled positions noncompetitively with applicants seeking downgrades or lateral moves. Id. ¶ 7. Indeed, Yokoyama had selected Daniels for his Maintenance Engineering Specialist position that way in 2004 when Daniels sought a lateral move. Id.

Daniels alleges that, although he was no longer a detailee for the MMO position once Tomooka was hired, he was still required to perform many of the MMO's supervisory duties, such as hiring and training mechanical technicians and handling union grievances, in addition to his own Maintenance Engineering Specialist duties. Compl. ¶ 13, 46, 59. Daniels says he was also asked to work the night shift to perform Tomooka's management duties. Id. ¶ 36. He says that, in his position, he was not supposed to be supervising employees. Id. ¶ 47. Daniels contends that Yokoyama required him to perform the additional duties because he is African American, see id. ¶ 20-21, and says he complained at least once to Yokoyama in 2006 about his additional work duties. See Declaration of Andre S. Wooten at Ex. 5, ECF No. 39-6.

On July 14, 2008, Daniels asked to meet with an employment discrimination counselor. Sometime later, in 2008, he filed an administrative complaint. See Defendant's Facts at Ex. 4 (EEO complaint). Daniels contends that Yokoyama retaliated against him for having filed the administrative complaint. In particular, Daniels asserts that Yokoyama required him to go to meetings every day, Compl. ¶ 39, gave him a lower performance evaluation, ¶ 69, and moved him out of his office, ¶ 49. After July 2008, Yokoyama stopped assigning Daniels additional duties.

Defendant's Facts ¶ 10.  On April 28, 2011, Daniels filed the
present action.

III.      **SUBJECT MATTER JURISDICTION OVER RETALIATION CLAIM.**

      **A.  Rule 12(b)(1) Standard.**

A motion to dismiss under Rule 12(b)(1) tests the
subject matter jurisdiction of the court.  <u>See, e.g.</u>, <u>Savage v.
Glendale Union High Sch.</u>, 343 F.3d 1036, 1039-40 (9th Cir. 2003);
<u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000).  A plaintiff
bears the burden of establishing the propriety of the court's
jurisdiction.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511
U.S. 375, 377 (1994).  "A Rule 12(b)(1) jurisdictional attack may
be facial or factual."  <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d
1035, 1039 (9th Cir. 2004).

On the present motion, it does not matter whether
Donahoe is making a facial or factual attack on subject matter
jurisdiction.  If Donahoe's challenge is a factual attack, he is
disputing "the truth of the allegations that, by themselves,
would otherwise invoke federal jurisdiction."  <u>See id.</u> at 1929.
"In resolving a factual attack on jurisdiction, the district
court may review evidence beyond the complaint without converting
the motion to dismiss into a motion for summary judgment."  <u>Id.</u>
(internal quotation marks omitted). Finally, "[f]ew procedural
limitations exist in a factual challenge to a complaint's

jurisdictional allegations." HRPT Properties Trust v. Lingle 676

F. Supp. 2d 1036, 1041 (D. Haw. 2009).

**B.     This Court Has Subject Matter Jurisdiction With Respect to Daniels's Retaliation Claim.**

To the extent Daniels is asserting a retaliation claim,

Donahoe argues that this court lacks subject matter jurisdiction

given Daniels's failure to exhaust his administrative remedies

with respect to such a claim. Donahoe argues that Daniels failed

to assert retaliation or the factual allegations supporting his

retaliation claim in his administrative complaint.

However, the failure to file a timely administrative

administrative complaint is not a jurisdictional prerequisite to

a Title VII claim.  Rather, this shortcoming "relates to the

substantive adequacy" of Daniels's complaint. Arbaugh v. Y & H

Corp., 546 U.S. 500, 503 (2006).  Title VII's broad grant of

jurisdiction "has served simply to underscore Congress' intention

to provide a federal forum for the adjudication of Title VII

claims." Id. at 506.  See also 42 U.S.C. § 2000e-

5(f)(3)(providing that "[e]ach United States district court and

each United States court of a place subject to the jurisdiction

of the United States shall have jurisdiction of actions brought

under [Title VII]").  As an employee of the United States Postal

Service, Daniels had to comply with 29 C.F.R. § 164.105 in

asserting employment discrimination.  See 29 C.F.R. § 1614.103

(noting that postal employees are covered by the cited

7

regulations).  Section 1614. 105(a)(1) required Daniels to

"initiate contact with a Counselor within 45 days of the date of

the matter alleged to be discriminatory or, in the case of

personnel action, within 45 days of the effective date of the

action."

Daniels did not meet this administrative requirement.

In other words, he failed to properly and timely exhaust his

administrative remedies before coming to court.  This, however,

is not an issue of subject matter jurisdiction.  The exhaustion

requirement is a condition of bringing a Title VII claim in

court, but Title VII is not a statute in which "the Legislature

clearly states that a threshold limitation on a statute's scope

shall count as jurisdictional." Arbaugh, 546 U.S. at 515.

"[W]hen Congress does not rank a statutory limitation on coverage

as jurisdictional, courts should treat the restriction as

nonjurisdictional in character."  Id.  In Arbaugh, the Supreme

Court held that the requirement that an employer subject to Title

VII have 15 employees did not go to subject matter jurisdiction.

Id.  The exhaustion requirement is akin to the employee

threshold.  See Kraus v. Presidio Trust Facilities

Div./Residential Mgmt. Branch, 572 F.3d 1039, 1044 (9th Cir.

2009) (noting that the regulatory prefiling exhaustion

requirement is not a jurisdictional prerequisite for suit in

federal court).  This court therefore denies the motion to dismiss for lack of jurisdiction.

**IV.     RULE 12(b)(6) DISMISSAL.**

**A.   Rule 12(b)(6) Standard.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party "may assert the following defense[] by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"

Dismissal under Rule 12(b)(6) may be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

On a Rule 12(b)(6) motion, the court takes all allegations of material fact as true and construes them in the light most favorable to the nonmoving party.  <u>Marcus v. Holder</u>, 574 F.3d 1182, 1184 (9th Cir. 2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to

9

"state a claim to relief that is plausible on its face." <u>Bell</u>
<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S.
at 678. "Threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not suffice."
<u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554). Whether a complaint
states a plausible claim for relief is "context-specific," and
such a determination "requires the reviewing court to draw on its
judicial experience and common sense." <u>Id.</u> (citing <u>Twombly</u>, 550
U.S. at 555).

>    **B.   Daniels's Claim That He Was Treated Disparately on
>          the Basis of Race When He Was Not Promoted Is
>          Dismissed for Failure to Exhaust.**

To the extent Daniels is asserting that he was subject
to disparate treatment when he was not promoted to the MMO
position, that claim is dismissed because Daniels failed to
timely initiate contact with an employment discrimination
counselor. Federal employees seeking relief under Title VII
must, as a precondition to filing an action in a federal district
court, "seek relief in the agency that has allegedly
discriminated against him." <u>Kraus</u>, 572 F.3d at 1043 (quoting
<u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 832 (1976)). As noted
earlier in this order, under 29 C.F.R. § 1614.105, Daniels had to

initiate contact with a postal service employment discrimination counselor "within 45 days of the date of the matter alleged to be discriminatory." The Ninth Circuit has interpreted this regulation as satisfied if the complaining employee contacts any agency official logically connected with the process of handling employment discrimination complaints. Id. at 1045-46. Daniels did not timely contact any such official. "[A]bsent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation is fatal to a federal employee's discrimination claim in federal court." Id. (quoting Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002) (modifications and quotation marks omitted)).

Tomooka was selected for the MMO position in 2006, but Daniels concedes in his Complaint that he did not initiate contact with an employment discrimination counselor or equivalent official until July 2008. Compl. ¶ 7. Daniels does not argue that waiver, estoppel, or equitable tolling applies. Daniels's failure to promote claim is thus dismissed based on his failure to exhaust his administrative remedies. Daniels is not given leave to amend in this regard because such amendment would be futile.

## C. Claims Under 42 U.S.C. § 1981 and 42 U.S.C. § 1981a Are Dismissed.

Donahoe also seeks dismissal of Daniels's §§ 1981 and 1981a claims on the ground that neither statute creates a cause

of action against federal employees being sued in their official

capacities.  The court agrees.

Section 1981(c) states:  "The rights protected by this

section are protected against impairment by nongovernmental

discrimination and impairment under color of State law."

Although in <u>Bowers v. Campbell</u>, 505 F.2d 1155, 1157 (9th Cir.

1974), the Ninth Circuit stated that "section 1981 applies to

employment discrimination by federal officials," that case was

decided before subsection c was added to § 1981 in 1991.  <u>See</u>

Civil Rights Act of 1991, Pub. L. No. 102-166, sec. 101, 105

Stat. 1071 (1991) (codified as amended at 42 U.S.C. § 1981

(1992)).

Section 1981a creates only supplemental remedies for a

plaintiff that has proved a violation of Title VII, not a

distinct cause of action.  Section 1981(a)(1) states:

> In an action brought by a complaining party
> under section 706 or 717 of the Civil Rights
> Act of 1964 [42 U.S.C.A. § 2000e-5 or
> 2000e-16] against a respondent who engaged in
> unlawful intentional discrimination (not an
> employment practice that is unlawful because
> of its disparate impact) prohibited under
> section 703, 704, or 717 of the Act [42
> U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16],
> and provided that the complaining party
> cannot recover under section 1981 of this
> title, the complaining party may recover
> compensatory and punitive damages as allowed
> in subsection (b) of this section, in
> addition to any relief authorized by section
> 706(g) of the Civil Rights Act of 1964, from
> the respondent.

As explained by the Fifth Circuit, "Section § 1981a does not create a new substantive right or cause of action. Rather, the plain language of the statute shows that it merely provides an additional remedy for 'unlawful intentional discrimination . . . prohibited under . . . 42 U.S.C. § 2000e-2 or 2000e-3.'" Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998) (quoting 42 U.S.C. §§ 2000e-2, 2000e-3).

Because Daniels does not state claims for relief under either § 1981 or § 1981a, these claims are dismissed.

V.        **SUMMARY JUDGMENT ON TITLE VII CLAIMS.**

A.    **Summary Judgment Standard.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller Prods., Inc., 454

13

F.3d 975, 987 (9th Cir. 2006). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987. When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were uncontroverted at trial. Id. (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party. Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Id. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See Balint v. Carson City, Nev., 180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (brackets omitted) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).

**B. None of Daniels's Remaining Title VII Theories Involves a Triable Issue.**

At the hearing on the summary judgment motion, Daniels's counsel clarified that Daniels's Title VII claim was based on three theories of discrimination: disparate treatment, retaliation, and hostile work environment. Daniels does not show that he has a triable issue with respect to any of those theories.

**1. Disparate Treatment.**

Earlier in this order, this court, noting a failure to exhaust administrative remedies, dismissed Daniels's Title VII disparate treatment claim relating to the failure to promote. The court turns now to other alleged bases for Daniels's disparate treatment claim.

Daniels appears to be asserting that he was also subject to disparate treatment in the form of being required to perform additional duties without extra pay. He says the extra duties were assigned because he is African American. The court first determines that this particular disparate treatment claim is timely. Although Daniels's complaint fails to specify the dates on which he was allegedly required to perform additional work, Donahoe's own evidence shows that Daniels timely contacted an employment counselor with respect to this circumstance. The administrative complaint states that Yokoyama attempted to

reassign Daniels to the night shift on July 10, 2008, and that Daniels continues to perform MMO duties "to this day." _Id_.

The court, of course, recognizes that Daniels cannot proceed on a continuing violations disparate treatment theory. The Supreme Court held in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." But Daniels's claim is not based on continuing violations. Even if each new assignment is a "discrete discriminatory act," Daniels says that he was required to perform additional duties at least until he filed his administrative complaint. And even though any assignment that did not occur within 45 days of July 14, 2008, is time-barred, Daniels may rely on prior acts as background evidence in support of any timely claim. See id. (stating that Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim").

Notwithstanding the timeliness of at least a part of the "additional duties" disparate impact claim, the claim fails because there is no triable issue of fact with respect to whether Daniels was required to perform any additional duties based on race discrimination. To prevail on a disparate treatment claim,

16

Daniels must establish a prima facie case of discrimination by
showing that (1) he belongs to a protected class, (2) he was
qualified for his position, (3) he was subject to an adverse
employment action, and (4) similarly situated individuals outside
his protected class were treated more favorably.  See Davis v.
Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  See also
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  If he
does so, the burden shifts to Donahoe to articulate a
"legitimate, nondiscriminatory reason for the challenged action."
See Davis, 520 F.3d at 1089.  If Donahoe satisfies his burden,
Daniels must finally show that the "reason is pretextual either
directly by persuading the court that a discriminatory reason
more likely motivated the employer or indirectly by showing that
the employer's proffered explanation is unworthy of credence."
Id. (quoting Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-
24 (9th Cir. 2000) (quotation marks omitted)).

     With respect to Daniels's prima facie case, there is no
dispute that Daniels belongs to a protected class and is
qualified for his position.  The court looks, therefore, at
whether Daniels suffered an adverse employment action.

     An adverse employment action is one that "materially
affects the compensation, terms, conditions, or privileges of
employment."  Davis, 520 F.3d at 1089 (quoting Chuang, 225 F.3d
at 1126 (quotation marks and modifications omitted)).  Daniels

17

contends that he was required to perform additional duties without pay. Donahoe describes the additional duties as "collateral," and asserts that performing those duties was not an adverse employment action because Daniels was not "overwhelmed."

The Ninth Circuit has held that "assigning more, or more burdensome, work responsibilities, is an adverse employment action." Davis, 520 F.3d at 1089 (internal citations omitted). Daniels says he falls within the Davis rubric because he was assigned a number of duties outside his job description. Wooten Decl. Ex. 5, ECF No. 39-6. Daniels also says that the additional duties were burdensome in that they "at times delayed [him] from completing his regular duties." Plaintiff Kurt Daniels Concise Statement Opp. Def.'s Mot. Summ. J. ¶ 11, ECF No. 39.

Assuming Daniels did suffer an adverse employment action in the form of being assigned more duties, he still does not make out a prima facie case because he does not show that he was assigned more duties than similarly situated persons outside his class. In Davis, 520 F.3d at 1090, the plaintiff established an adverse employment action on a summary judgment motion by alleging that she had been assigned a disproportionate amount of hazardous work compared to her male co-workers. Yokoyama's undisputed declaration, however, says that he routinely assigned collateral duties to all of his subordinates, including Daniels. Herbert H. Yokoyama Decl. Ex. 2 at ¶¶ 8-10, ECF No. 21-3. The

record establishes at most that Daniels, like his coworkers, was assigned duties beyond his job description.  Because nothing in the record suggests that, as an African American, Daniels was assigned disproportionately more collateral duties than similarly situated non-African American employees, the court concludes that Daniels fails to make out a prima facie case in this respect.

Even assuming Daniels did make out a prima facie case, the court would grant summary judgment to Donahoe on the "additional duties" disparate treatment claim.  Donahoe provides a legitimate, nondiscriminatory reason for assigning extra duties.  Yokoyama says he routinely assigned additional duties based on his assessment of each employee's workload. Id. ¶ 8. No employee ever received additional pay for performing collateral duties.  Id.

The burden then shifts to Daniels to show that Donahoe's reason is pretextual. Notably, when Daniels complained about his collateral duties, Yokoyama asked Daniels to provide a written breakdown of his workload so that Yokoyama could determine if Daniels's assignments should be reallocated.  Id. ¶ 9.  Daniels failed to adequately comply with this request.  See Def.'s Opp. Ex. 5, Email from Kurt Daniels to Herbert Yokoyama. While Daniels told Yokoyama that he would "attempt to develop a time management outline . . . as soon as possible," there is no

indication in the record that Daniels followed through on this promise.

Asserting that he was assigned additional duties unequally, id., Daniels points to no evidence demonstrating that Yokoyama assigned him more duties based on his race. Daniels does point to a number of exhibits supposedly demonstrating that Tomooka was treated more favorably than Daniels and other employees and that Tomooka was not performing her job adequately. Even if Daniels is correct about Tomooka, it does not demonstrate that Yokoyama assigned Daniels more duties based on his race. A preference for one employee that may result in additional work for another employee is not the same as assigning an employee additional work based on race. Daniels presents no evidence at all demonstrating that Yokoyama's reasons were a pretext for race discrimination. Daniels's "additional duties" disparate treatment claim therefore fails.

The court notes also that, because Yokoyama hired Daniels in 2004, Yokoyama is entitled to the "same actor" inference. When "the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090, 1096 (9th Cir. 2005) (quoting Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir.

1996)).  The inference also applies in cases in which a "plaintiff was not actually fired but merely offered a less desirable job assignment."  Id.

"The same-actor inference is neither a mandatory presumption (on the one hand) nor a mere possible conclusion for the jury to draw (on the other).  Rather, it is a 'strong inference' that a court must take into account on a summary judgment motion."  Id. (citing Bradley, 104 F.3d at 271).  Examining whether Daniels "has made out the strong case of bias necessary to overcome this inference," see id., this court concludes that Daniels fails to do so.

Two other issues raised by Daniels provide no basis for recovery by him.  First, Daniels points to Tomooka's sexual harassment claim against Yokoyama.  Daniels appears to argue that Yokoyama was romantically interested in Tomooka and therefore treated her more favorably than Daniels.  Although, under 29 C.F.R. § 1604.11(g), an employer may be held liable for sex discrimination when "employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors," Daniels himself was not the subject of sexual advances or requests for sexual favors.  His Complaint explicitly states that he was discriminated against because of his "race, color and national origin."  Compl. ¶ 87.  There is no mention of sex

discrimination. Not only is Daniels barred from asserting a new theory of discrimination, Daniels cites neither facts nor authority for the proposition that any alleged sexual harassment of Tomooka by Yokoyama can, without more, give rise to a Title VII claim by Daniel.

Second, Daniels seeks a favorable ruling based on alleged spoliation of evidence by Donahoe. While complaining that Donahoe has lost a spreadsheet and other documents relating to Tomooka's work, Daniel presents no evidence that any such loss was the result of bad faith. See Medical Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 823-25 (9th Cir. 2002) (affirming a district court's ruling declining to allow an inference that lost evidence was unfavorable to the party that lost the evidence when there was no evidence that the party had acted in bad faith). Moreover, it is unclear to the court how Tomooka's work habits or treatment would establish anything more than possibly personal favoritism, as opposed to race discrimination.

Donahoe is entitled to summary judgment on Daniels's "additional duties" disparate treatment claim.

### 2. Retaliation.

While this court noted earlier in this order that it has jurisdiction over Daniels's retaliation claim, that claim does not survive summary judgment review. As Donahoe argues,

Daniels did not contact an employment discrimination counselor or equivalent official to file an administrative complaint alleging any retaliation claim with respect to this action. Daniels alleges in his Complaint that, in retaliation for his having filed an administrative complaint, Yokoyama required him to go to meetings, gave him a low performance evaluation, and moved him out of his office. Daniels did not allege those facts in his administrative complaint. He could not have, as those discrete acts allegedly occurred after Daniels had filed the administrative complaint. Nor are they similar to the discriminatory acts Daniels alleged in his administrative complaint, as that complaint focused on Daniels's assignment to the night shift and performance of supervisory MMO duties, and Yokoyama's alleged preferential treatment of Tomooka. A reasonable administrative investigation based on the administrative complaint would not have encompassed Yokoyama's alleged retaliatory acts. Daniels therefore failed to administratively exhaust his retaliation claims before filing this action, and Donahoe is entitled to summary judgment on the retaliation claim on that ground.

At the hearing on this motion, Daniels belatedly moved to file two additional exhibits. Daniels's proposed Exhibit 24 is a decision from the EEOC dated April 2, 2009, which includes authorization to file a civil action. Daniels's proposed Exhibit

25 is a letter dated June 29, 2011, from the EEOC dismissing his EEOC complaint because he had filed the present suit with this court. Daniels presumably had Exhibit 24 before filing the present suit, and received Exhibit 25 after commencing the present action. Neither exhibit is relevant to the issues before the court. <u>See</u> Def.'s Opp. To Pl.'s Mot. File Supp. Exs., ECF No. 53, 2. The exhaustion required by 29 C.F.R. § 1614.105 is contact with an administrative officer within 45 days of the alleged discrimination. The filing of a charge with the EEOC did not satisfy 29 C.F.R. § 1614.105. Accordingly, the court denies Daniels's request for leave to file the additional exhibits.

Even if Daniels had exhausted his administrative remedies, Daniels's allegations fall short of establishing a retaliation claim. To establish a prima facie case of retaliation under Title VII, Daniels must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1034-35 (9th Cir. 2006). "The antiretaliation provision [in Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." <u>Burlington N. & Santa Fe. Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006). Accordingly, Daniels "must show that a reasonable employee would have found the action materially adverse, which in

24

this context means it well might have dissuaded a reasonable
worker from making or supporting a charge of discrimination."
White, 548 U.S. 53, 68 (2006)(internal quotation marks omitted).

Daniels does not satisfy this burden.  Title VII "does
not set forth a general civility code for the American
workplace."  White, 548 U.S. at 68.  Daniels makes bold
assertions, but the record does not suggest a retaliatory motive.
To the contrary, Yokoyama indicates that he backed away from
taking actions that Daniels complained about.  Yokoyama Decl.
¶¶ 9-10.

### 3. Hostile Work Environment.

Daniels also argues that he was subjected to a hostile
work environment.  To establish a prima facie case for a hostile
work environment claim, Daniels "must raise a triable issue of
fact as to whether (1) the defendants subjected [him] to verbal
or physical conduct based on [his] race; (2) the conduct was
unwelcome; and (3) the conduct was sufficiently severe or
pervasive to alter the conditions of [his] employment and create
an abusive working environment."  Surrell v. Cal. Water Serv.
Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

Daniels fails to establish a triable issue of fact as
to whether defendant subjected him to verbal or physical conduct
based on his race.  To the extent Daniels is arguing that
Yokoyama assigned him collateral duties because of his race,

including attending meetings, Daniels's assertions are
unsupported by the record.  In fact, Yokoyama assigned collateral
duties to all of his immediate subordinates.  Yokoyama Decl. ¶ 8.

To the extent Daniels is arguing that he was deprived
of an office because of his race, this claim is also unsupported
by the record.  Unlike managers and supervisors with offices,
Daniels did not have subordinates.  Id. ¶ 12. Accordingly,
Yokoyama did not believe Daniels needed an office, but
nonetheless informed Daniels that he could have an office built
for him if he took the initiative.  Id. ¶ 12.  Daniels did not.
Id. ¶ 12.

To the extent Daniels is contending that he was
evaluated poorly because of his race, this claim is similarly
unsupported by the record.  Yokoyama slightly downgraded Daniels
in one of four evaluation categories because, Yokoyama says, he
believed this accurately reflected Daniels's performance.  Id.
¶ 13.  The evaluation does not rise to the level of an adverse
personnel action.  The evaluation as a whole was not negative; in
fact, it was above average.  Specifically, Yokoyama rated Daniels
"above average" in three categories, "average" in one, and "above
average" overall.  Daniels's allegations fail to rise to the
level of an actionable claim.

Viewed collectively or individually, the matters
Daniels points to were not "sufficiently severe or pervasive to

alter the conditions of [Daniels's] employment," and there is no evidence they "create[d] an abusive working environment."

Surrell, 518 F.3d at 1108.  Accordingly, Daniels's claim relating to a hostile work environment fails.

**VI.     CONCLUSION**

For the foregoing reasons, the court grants Donahoe's motion to dismiss and/or for summary judgment.  The Clerk of Court is directed to enter judgment for Donahoe and to close this case.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 1, 2012.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


Daniels v. Donahoe; Civil No. 11-00287 SOM/RLP; ORDER GRANTING DEFENDANT PATRICK R. DONAHOE'S MOTION FOR DISMISSAL AND SUMMARY JUDGMENT